IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

Corrales Ventures, LLC,

    Plaintiff,

 vs.                                                            1:20-cv-00872-LF-SCY

Union Insurance Company,

    Defendants.

**MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on defendant Union Insurance Company's ("Union") Motion to Exclude the Testimony of Plaintiff's Expert Greg Becker (Doc. 46), and Union's Motion to Limit the Testimony of Plaintiff's Expert Mark MacClary (Doc. 47). Plaintiff Corrales Ventures, LLC ("Corrales Ventures") opposes both motions. Docs. 51, 52. Having considered the parties' submissions and the relevant law, and the argument of counsel at the pretrial hearing, the Court DENIES the motion relating to Mr. Becker, and GRANTS in part the motion relating to Mr. MacClary. The Court will take the remainder of the motion relating to Mr. MacClary under advisement and will make a decision at the final pretrial conference on December 2, 2022.

    **I.**    **Background**

Corrales Ventures owns a strip shopping center located at 10200 Corrales Road, Albuquerque, New Mexico 87114, which is known as the Las Tiendas Shopping Center ("Property"). The Property was insured by an insurance policy issued by Union Insurance Company under policy number CPA 4600685-15 with effective dates August 5, 2017, to August 5, 2018 ("Policy"). On July 31, 2018, the Property was damaged by a storm.

In early May 2019, Corrales Ventures made a claim with Union for hail damage to its Property that was discovered by a roofing company doing repair work. Union began its investigation of the claim by sending an adjuster, an engineer, and an HVAC consultant to investigate the claim. Based on what these consultants reported regarding their observation of the damages and appropriate repairs, Union issued payment on September 9, 2019, for damage to the Property's HVAC system, after accounting for the Policy's deductible and recoverable depreciation. Union issued another payment on December 12, 2019, for damage to the Property's roof, after accounting for depreciation.

Corrales Ventures disagreed with Union's findings regarding the repair method, scope, and costs. Corrales Ventures hired a public adjuster to represent it for the claim. Corrales Ventures, through its public adjuster, also retained an HVAC consultant to help investigate the damages. After a joint reinspection with Union's consultants and Corrales Ventures' consultants, Union made a supplemental payment to account for the cost of a different coating system for the roof recommended by Union's building consultant. Corrales Ventures and Union continue to disagree regarding the scope of damage, proper repair method, and repair costs, particularly regarding the proper repair method to fix the damaged roof and HVAC units on the Property. As a result, Corrales Ventures initiated this lawsuit against Union for breach of contract, bad faith, and unfair claims settlement practices. Union maintains it properly investigated the loss and paid the amounts owed under the Policy.

Through its motions, Union asks the Court to exclude the testimony of two of Corrales Ventures' experts: Greg Becker and Mark MacClary. Greg Becker is a professional engineer who inspected Corrales Ventures' roof and opines that a wind and hailstorm that occurred on July 30, 2018, caused damage to the Property's roof, and that the roof cannot be repaired. In Mr.

Becker's view, the roof cannot be repaired so it must be replaced. Mark MacClary is forensic engineer who inspected the property and evaluated the damage to the mechanical systems caused by the July 30, 2018, storm. Mr. MacClary also provided an estimate of the cost of repairing the mechanical systems.

## II. Discussion

### A. Legal Standard

Federal Rule of Evidence 702 governs the admissibility of expert testimony at trial:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. When an objection to an expert's testimony is raised, "the court must perform *Daubert* gatekeeper duties before the jury is permitted to hear the evidence." *Siegel v. Blue Giant Equip. Corp.*, 2019 WL 5549331 (10th Cir. Oct. 28, 2019) (citing *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 592-93 (1993); *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999)). These duties are twofold. First, a court must ensure that the expert is "qualified 'by knowledge, skill, experience, training, or education' to render an opinion." *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc) (quoting FED. R. EVID. 702). Then, if the expert is sufficiently qualified, a court tests whether the "expert's opinion is reliable by assessing the underlying reasoning and methodology, as set forth in *Daubert*." *Id*. Reliability is determined by whether: (1) testimony is based on sufficient facts or data; (2) the testimony is the product of reliable principles and methods; (3) and the witness has applied the principles and methods reliably to the facts of the case. *Smith v. Sears Roebuck and Co.*, 232 F.

App'x 780, 781 (10th Cir. 2007). "The burden of proof is on the proponent of the evidence," in this case Corrales Ventures. *United States v. Baines*, 573 F.3d 979, 985 (10th Cir. 2009).

> The party sponsoring expert testimony
>
> need not prove that the expert is undisputably correct or that the expert's theory is "generally accepted" in the scientific community. Instead, the [party] must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements.

*Truck Ins. Exch. v. MagneTek, Inc.*, 360 F.3d 1206, 1210 (10th Cir.2004) (quoting *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 781 (10th Cir.1999)). The touchstone of admissibility is helpfulness to the trier of fact. *Werth v. Makita Elec. Works, Ltd.*, 950 F.2d 643, 648 (10th Cir.1991). "An expert's opinion should be excluded only if that opinion is so fundamentally unsupported that it can offer no assistance to the jury." *Synergetics, Inc. v. Hurst*, 477 F.3d 949, 956 (8th Cir. 2007) (internal citation and quotations omitted).

### B. Greg Becker

Union does not contest Mr. Becker's qualifications. Instead, it argues that two of Mr. Becker's opinions are not reliable—the opinion that the roof needs to be replaced due to moisture intrusion as a result of the July 30, 2018, storm, and the opinion that all of the damage he observed resulted from that storm. Doc. 46 at 3. Union argues that these opinions are not reliable because Mr. Becker ignored any weather data prior to January 2018, and any leaks that occurred before July 30, 2018. *Id*. at 4. Mr. Becker explained, however, that he focused on leaks that occurred after the storm to identify the damage most likely caused by that storm. Doc. 46-4 at 67:20–68:24, 69:7–25; Doc. 51-2 at 78:1–17, 80:1–6, 88:2–17.[1] He also considered historical data provided by the owners and tenants regarding previous leaks and the repair of

---

[1] Citations to excerpts from deposition transcripts refer to the page and line number of the deposition transcript rather than the CM/ECF pagination.

those leaks. Doc. 46-2 at 2; Doc. 46-4 at 69:7–25; Doc. 51-2 at 76:6–25, 80:1–6, 113: 4–21; 123:1–6. Mr. Becker also considered other potential causes of the damage, including determining whether there were separations and roof penetrations aside from the hail and wind damage, and whether the water penetration was due to a parapet wall leak. Doc. 51-2 at 79:6–15, 80:1–6, 94:11–95:19, 100:1–101:22, 104:3–105:20, 107:9–108:3, 112:12–19, 113:4–21, 115:3–12, 115:19–116:3, 119:17–120:3; 125:25–126:3. He inspected the interior of the building to determine whether any of the leaks were long-term leaks. *Id*. at 115:3–12, 115:19–16:3, 118:15–17, 119:17–120:3, 124:1–17; *see also* Doc. 46-2 at 5. Based on Mr. Becker's inspections of the roof and the interior, the historical data about the roof from the owners, and the weather data from around the time that the leaks occurred, he concluded that the July 30, 2018, storm correlated best with the damage, and that because of that damage, the roof needed to be replaced. Doc. 46-2 at 5. He concluded it could not be repaired because moisture had penetrated the roof in the locations of the leaks that had occurred as a result of the July 30, 2018, storm. *Id*. Mr. Becker's opinions are based on sufficient facts and data; his testimony is the product of reliable principles and methods, and he has applied the principles and methods reliably to the facts of the case.

In essence, the alleged deficiencies that Union points to are potential flaws and weaknesses that are subject to cross-examination and will be weighed by the jury. Corrales Ventures need not prove that its expert is indisputably correct; it must show only that the method employed by its expert in reaching his conclusion is scientifically sound, and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability requirements. *Mitchell*, 165 F.3d at 781; *see also United States v. Baines*, 573 F.3d 979, 985 (10th Cir. 2009) ("[v]igorous cross-examination, presentation of contrary evidence and careful instruction on the burden of proof are

the traditional and appropriate means of attacking shaky but admissible evidence") (quoting *Daubert*, 509 U.S. at 596).  The Court will not exclude Mr. Becker's testimony.

### C.  Mark MacClary

Union does not contest Mr. MacClary's qualifications.  Instead, it argues that Mr. MacClary's opinions are not reliable because he relied on others to determine the date of the loss, and his opinion on the cost of repairs is not based on a reliable methodology.[2]  Doc. 47 at 3. With respect to the date of loss, Union focuses primarily on an error in Mr. MacClary's report that Mr. MacClary admitted was the result of him copying the date from something else.  *See* Doc. 47 at 4.  Mr. MacClary corrected the date at his deposition, but he admitted that he did not have an expert opinion regarding the date of loss; he determined the date of loss by talking to the property owners and relying on other experts' reports.  Doc. 47-4 at 60:12–16:22, 64:25–65:9. The Court therefore grants Union's motion in part and orders that Mr. MacClary may not offer an opinion as to the date of the loss.

With regard to Mr. MacClary's cost estimate, Union argues that Mr. MacClary's method of calculating labor costs is not reliable, nor is his method of calculating depreciation.  With respect to labor costs, Mr. MacClary testified that he relied on spreadsheets created by his former employer, David Draper, based on Mr. Draper's 20 to 25 years in the industry.  Doc. 52-2 at 55:14–56:21, 57:15–58:5.  He testified that Mr. Draper was familiar with labor costs in the HVAC industry, and that the formula was updated as much as possible.  *Id.*  He also testified that he checked the accuracy of his labor pricing with an HVAC technician to make sure they were accurate.  *Id.* at 56:22–57:9.  But because the spreadsheet that Mr. MacClary relied on was not

---

[2] Union also argues that Mr. MacClary failed to consider other causes, but it did not develop that argument.  Doc. 47 at 3.  As such, the Court will not consider it.

produced to Union, neither Union nor the Court could determine whether Mr. MacClary's method of calculating labor costs is sufficiently reliable.

Similarly, Mr. MacClary testified that he created an algorithm to calculate depreciation using an HVAC unit's age, condition, and life expectancy. Doc. 52-2 at 46:6–47:13. He created his algorithm by meeting with someone from the public adjuster C3 who uses Xactimate[3] and then reverse engineering a formula. *See id.* at 47:4–48:10. But Mr. MacClary did not provide his formula to Union. More troubling, however, is that his budget estimates show multiple items for which the manufacturer, model number, serial number, and/or age of the unit is "unavailable," but the depreciation ranges vary dramatically—from no depreciation to more than 50% depreciation. *See* Doc. 47-3 at 36–38. And there are some items that were more than 15 years old at the time of the storm that are not depreciated at all, while other items were depreciated by more than 50%. *See id.* Neither Union nor the Court can discern what Mr. MacClary's methodology is and whether it is reliable.

At the pretrial conference on November 14, 2022, the Court ordered Corrales Ventures to produce Mr. MacClary's spreadsheet for determining labor costs and his algorithm for determining depreciation to Union by November 18, 2022. The Court also ordered Mr. MacClary to appear by video at the final pretrial conference for questioning so that the Court may make a final determination as to whether Mr. MacClary will be permitted to testify as to the cost of repairs to the HVAC system.

---

[3] Mr. MacClary testified that Xactimate is "one of the industry standards as far as depreciating." Doc. 52-2 at 14.

### III.     Conclusion

For the foregoing reasons, the Court DENIES defendant Union Insurance Company's Motion to Exclude the Testimony of Plaintiff's Expert Greg Becker (Doc. 46), and it GRANTS in part Union's Motion to Limit the Testimony of Plaintiff's Expert Mark MacClary. The remainder of Union's motion with respect to Mr. MacClary will be held in abeyance until after the pretrial conference on December 2, 2022.

_____
Laura Fashing
United States Magistrate Judge
Presiding by Consent