IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CORRALES VENTURES, LLC,

     Plaintiff,

vs.                                      1:20-cv-00872-LF-SCY

Union Insurance Company,

     Defendants.

**<u>MEMORANDUM OPINION AND ORDER</u>**

     This matter comes before the Court on defendant Union Insurance Company's ("Union")

Motion for Summary Judgment.  Doc. 48.  Plaintiff Corrales Ventures, LLC ("Corrales

Ventures") opposes the motion.  Doc. 53.  Having considered the parties' submissions, the

relevant law, and the argument of counsel at the pretrial conference, the Court GRANTS the

motion in part, and DENIES it in part.

**I.**     **<u>Factual Background</u>**[1]

     Corrales Ventures owns a strip shopping center located at 10200 Corrales Road,

Albuquerque, New Mexico 87114, which is known as the Las Tiendas Shopping Center

---

[1] Union did not comply with this Court's local rules which require,

> The moving party must file with the [summary judgment] motion a written
> memorandum containing a short, concise statement of the reasons in support of
> the motion with a list of authorities relied upon (the "Memorandum"). . . .  The
> Memorandum must set out a concise statement of all of the material facts as to
> which the movant contends no genuine issue exists.  The facts must be **numbered**
> and must refer with particularity to those portions of the record upon which the
> movant relies.

D.N.M.LR-Civ. 56.1(b).  Consequently, the Court relies on the facts that Corrales
Ventures specifically does not dispute or which the Court otherwise can readily ascertain.
The Court did not scour the exhibits to find evidentiary support for all Union's assertions
of facts.

("Property").  Doc. 48 at 2; Doc. 53 at 2.  The Property was insured by an insurance policy

issued by Union Insurance Company under policy number CPA 4600685-15 with effective dates

August 5, 2017, to August 5, 2018 ("Policy").  *Id.*  On July 31, 2018, the Property was damaged

by a storm.  *Id.*

       In May 2019, Corrales Ventures was having work done on the roof in response to tenant

complaints about roof leaks; two of the three roofers suggested there may be hail damage.  Doc.

48-5 at 9.  On May 3, 2019, Corrales Ventures made a claim with Union for hail damage to the

Property.  Doc. 48-7.  Union acknowledged the claim and began its investigation.  *See* Doc. 48-5

at 9; Doc. 48-8.  This investigation included retaining an independent adjuster and two

engineers.  Doc. 48-5 at 8.  According to a CoreLogic weather report, the largest hail near the

Property since May 6, 2009, was .8", slightly smaller than a nickel, on July 30-31, 2018.  Doc.

48-9.

       Union retained independent adjuster Rick Hollingsworth of Ideal Adjusting to inspect the

Property.  Doc. 48-5 at 8; Doc. 48-11 at 2.  Mr. Hollingsworth inspected the Property on May

13, 2019, ten days after Corrales Ventures notified Union of its claim.  Doc. 48-11 at 2.  While

Mr. Hollingsworth was inspecting the Property, he observed damage to the modified bitumen

roof as well as some damage to the HVAC units from hail.  *Id.* at 2–3.  Mr. Hollingsworth

believed that some HVAC units could be repaired but some required coil replacement.  Doc. 48-

5 at 8.  At the inspection, the Property owner said that he already had had an HVAC technician

inspection, and he (the Property owner) would be sending a report and estimate to Mr.

Hollingsworth.  *See id.*  On June 17, 2019, Union followed up on the status of the HVAC

technician report.  *See id.*  Plaintiff's owner had not yet provided the HVAC technician's report

he said would be forthcoming.  *See id.*

After receiving the HVAC technician's report, Mr. Hollingsworth prepared a report identifying the damage he believed the storm caused to the Property and recommended that an engineer be retained to investigate the scope of damage.  Doc. 48-5 at 7.  Union retained engineer David Grieves of Chavez-Grieves Consulting Engineers and RJ Ricci of Commercial Insurance Services ("CIS") to investigate the scope of damage to the roof and HVAC respectively.  *Id.* at 6–7.  After inspecting the Property, Mr. Grieves determined that core samples were needed to determine the scope of damage to the roof.  *Id.* at 2; Doc. 48-12 at 9–10.  Corrales Ventures told Grieves that it would work with its roofer to obtain the samples.  *See* Doc. 48-5 at 2.

On September 19, 2019, Union issued payment to Plaintiff in the amount of $87,153.71 for a portion of the damages.  Doc. 48-16.  The payment was for damage to the HVAC system as assessed by CIS, minus the deductible and recoverable depreciation.  *Id.*  The letter informed Corrales Ventures that it had a duty to inform Union of its intent to repair within 180 days and provide receipts for those repairs to obtain the recoverable depreciation.  *Id.*

After receiving the core samples, Union retained engineer Jim Koontz to perform laboratory analyses on them.  *See* Doc. 48-17 at 3.  On September 25, 2019, based on the results of lab testing as well as his own inspection, Mr. Grieves issued a report and concluded that the roofs could be repaired by recoating the granules.  *See id.* at 3–5.  Approximately a month earlier, Mr. Grieves had stated that "[w]hile the membrane condition is fair given its age[,] a replacement of the membrane with a new modified bitumen (like for like) should be investigated as a cost comparison."  Doc. 48-12 at 3.[2]

---

[2] Pursuant to the Court's order, Union filed a new set of exhibits with the Court that highlighted the relevant portion of the exhibit as required by the Court's local rules.  *See* Doc. 54 (court

After receiving Mr. Grieves' September 25 report, Union requested Vern Munz, who had since replaced Mr. Hollingsworth, to prepare an estimate for the cost of the coating.  Doc. 48-6 at 12.  On October 8, 2019, Union advised Corrales Ventures of the request for an estimate. Doc. 48-21 at 3.  A week later, at Corrales Ventures' request, Union provided Corrales Ventures with a copy of Mr. Grieves' initial and supplemental reports.  *See id.* at 2.  Mr. Munz estimated that it would cost $100,297.45 to essentially coat the roof, with $43,513.91 in depreciation.  *See* Doc. 48-20.  On December 12, 2019, Union issued another payment of $56,783.54 to Corrales Ventures, bringing the total payment to $143,937.25.  Doc. 48-24.  Union further informed Corrales Ventures that under the terms of the Policy, a total of $70,573.09 of recoverable depreciation was now available, and again provided instructions for obtaining that.  *See id.*

After Union issued the December 12, 2019, payment, it did not receive any response or communications from Corrales Ventures until March 6, 2020, when Union received a letter of representation from public adjuster Matt Behrens.  *See* Doc. 48-6 at 7; Doc. 48-25.  Union notified Mr. Munz that Corrales Ventures had retained a public adjuster and requested that Mr. Munz arrange to inspect the property with Mr. Behrens.  *See* Doc. 48-26.  Because Mr. Behrens had suggested that the method of repair recommended by Mr. Grieves was not correct, Union also requested that Mr. Munz arrange for Mr. Grieves to be present along with a roofer, Gary Boyd.  *See* Doc. 48-27.  Mr. Boyd's role was to provide his expertise regarding the appropriate method of repair given the disagreement between engineer Grieves and public adjuster Behrens. *See* Doc. 48-28.

---

order); Doc. 65 (highlighted exhibits).  Unfortunately, the new set of exhibits does not contain a face page for each exhibit, so the CM/ECF page numbers in the highlighted exhibits is slightly different from the original exhibits.  This Order cites to the CM/ECF page number in the original exhibits as those are the exhibits to which Corrales Ventures also cites.

Mr. Boyd agreed with Mr. Grieves that recoating was the correct method of repair but suggested adding an additional adhesive to help the coating adhere to the roof.  *See* Doc. 48-29. Based on the results of this re-inspection, Union issued an additional payment on August 12, 2020, of $73,943.30, bringing the total payment to $217,880.55, and recoverable depreciation to $50,255.46.  Doc. 48-31.  Union again notified Corrales Ventures of its duty and obligations related to the recoverable depreciation under the Policy.  *See id.*

Corrales Ventures disagreed and continues to disagree with Union's findings regarding the repair method, scope, and costs, particularly regarding the proper repair method to fix the damaged roof and HVAC units on the Property.  Specifically, Corrales Ventures' retained expert, Greg Becker, determined that the Property was damaged by wind and hail on July 30, 2018, and that the roof must be entirely replaced.  *See* Doc. 46-2.  He also determined that applying a coating, as recommended by Mr. Grieves and Mr. Boyd, is not a proper or effective repair.  *Id.*  Corrales Ventures' construction and building consultant expert, David Poynor, determined that hail impacted the roof, and the damage is not repairable.  *See* Doc. 53-14 at 12 (38:4–39:8).  Mr. Poynor estimated that the cost of replacing the roof ranged from $1,260,007.52 to $1,354,990.64.  *Id.* at 25.

On July 20, 2020, Corrales Ventures initiated this lawsuit against Union for breach of contract, bad faith, and unfair claims settlement practices under the New Mexico Unfair Insurance Practices Act.  Doc. 1-3.

## II.    Union's Motion for Summary Judgment and Corrales Ventures' Response

Union argues that the Court should grant summary judgment in its favor on the breach of contract claim because it should exclude the testimony of two of Corrales Ventures' experts, Greg Becker and Mark MacClary, and without these opinions, Corrales Ventures cannot prove

three elements of a breach of contract claim:  breach, causation, or damages.  Doc. 48 at 9.  In the alternative, it argues that even if the Court accepts Corrales Ventures' causation evidence as true, the cost to replace the roof is excluded because Mr. Becker opines that wind, not hail, caused the separations or tears in the roof that allowed the water to penetrate the roof, and Mr. Becker cannot identify which of two storms caused the separations.  *Id.*  Union further argues that various policy provisions exclude coverage for replacing the roof.  *See id.* at 10–11.  Corrales Ventures contends that its experts should not be excluded, and that it has sufficient evidence to create triable issues of fact on each element of a breach of contract claim.  Doc. 53 at 7–14.

With respect to the extra-contractual claims, Union argues that Corrales Ventures cannot prove that it misrepresented any facts or policy provisions; that there is no evidence that Union failed to conduct a reasonable investigation; that there is no evidence that Union delayed investigating Corrales Ventures' claim; and that there is no evidence that Union compelled Corrales Ventures to institute this lawsuit to recover under the policy.  *See* Doc. 48 at 13–17.  Corrales Ventures argues that it has put forth sufficient evidence to create a triable issue of fact that Union misrepresented that coating the roof was an acceptable repair method; that Union failed to conduct a prompt, fair, or equitable evaluation of Corrales Ventures' claim; that Union's valuation of the claim was unfounded; and that Union's conduct forced Corrales Ventures to institute litigation.  Neither party clearly delineates between Corrales Ventures' common law bad faith claim and its claim under the New Mexico Unfair Insurance Practices Act.

III.   **Discussion**

A.  **Legal Standard**

Summary judgment will be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A genuine dispute exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party" on the issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant bears the initial burden of establishing that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  "[T]he movant need not negate the non-movant's claim, but need only point to an absence of evidence to support the non-movant's claim." *Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (quoting *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1125 (10th Cir. 2000)).  If this burden is met, the non-movant must come forward with specific facts, supported by admissible evidence, which demonstrate the presence of a genuine issue for trial. *Celotex*, 477 U.S. at 324.  The non-moving party cannot rely upon conclusory allegations or contentions of counsel to defeat summary judgment. *See Pueblo Neighborhood Health Ctrs., Inc. v. Losavio*, 847 F.2d 642, 649 (10th Cir. 1988).  Rather, the non-movant has a responsibility to "go beyond the pleadings and designate specific facts so as to make a showing sufficient to establish the existence of an element essential to [his] case in order to survive summary judgment." *Johnson v. Mullin*, 422 F.3d 1184, 1187 (10th Cir. 2005) (alteration in original) (internal quotation marks omitted).

At the summary judgment stage, the Court must view the facts and draw all reasonable inferences in the light most favorable to the non-movant. *Scott v. Harris*, 550 U.S. 372, 378 (2007). The Court's function "is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* Summary judgment may be granted where "the [nonmoving party's] evidence is merely colorable, or is not significantly probative." *Id.* at 249–50 (internal citations omitted).

## B. Breach of Contract Claim

Under New Mexico Law, "insurance contracts are construed by the same principles which govern the interpretation of all contracts." *Rummel v. Lexington Ins. Co.*, 1997-NMSC-041, ¶ 18, 123 N.M. 752, 758, 945 P.2d 970, 976 (quotation marks omitted). "The elements of a breach-of-contract action are the existence of the contract, breach of the contract, causation, and damages." *Anderson Living Tr. v. ConocoPhillips Co., LLC*, 952 F. Supp. 2d 979, 1030 (D.N.M. 2013).

Union first argues that without the testimony of Greg Becker,[3] Corrales Ventures cannot prove the elements of breach, causation, and damages. Doc. 48 at 9. Because the Court has

---

[3] Union also argued that Mr. MacClary's opinions should be excluded, and that without his testimony, Corrales Ventures would not be able to prove a breach of contract. *See* Doc. 48 at 9. Mr. MacClary is an expert who was expected to testify regarding the damage to the Property's HVAC and mechanical systems, and the cost of repairing those systems. *See* Doc. 63 at 3. However, on November 28, 2022, counsel for Corrales Ventures informed the Court that Mr. MacClary would not be testifying. But Union focuses entirely on Mr. Becker's testimony, not Mr. MacClary's testimony, in arguing that even if the Court admits this expert testimony, Corrales Ventures cannot prove a breach of contract. *See* Doc. 48 at 9–11. Because Mr. MacClary no longer is expected to testify, the Court, like Union, focuses on whether Corrales Ventures could prove a breach-of-contract claim based on Mr. Becker's testimony.

denied Union's motions to exclude the testimony of Mr. Becker, Doc. 88, this argument is without merit.

Union next argues that "even taking all of Plaintiff's causation evidence as true[], the cost to replace the roof is still excluded under the policy." Doc. 48 at 9. The Court rejects this argument. Union asserts that because Mr. Becker says that wind, not hail, allowed water to penetrate the roof, and because Mr. Becker could not say which of two storms during the policy period caused the damage, the cost of replacing the roof is not covered. *See id.* But as Corrales Ventures points out, because both storms occurred during the policy period, it does not matter which one caused the damage; damage from either storm would be covered. *See* Doc. 53 at 10.

Mr. Becker testified that in his opinion, the wind damage from the July 30, 2018, storm caused damage to the roof that resulted in leaks. The roof needs to be replaced, not just repaired, because moisture was trapped in the roof, and "coating" the roof—as Union suggested—would be ineffective. *See* Doc. 48-2 at 4–7. In short, the parties agree that both wind and hail damage is a covered cause of loss, and they agree that the property was damaged by either wind or hail on or about July 30, 2018, but they disagree as to the extent of the damage caused by that storm. They also disagree as to whether the roof can be repaired or must be replaced, and whether the cost of replacement is covered under the policy or is excluded by various policy provisions. But whether the exclusions apply are dependent on factual determinations. Union has failed to meet its burden of showing that there is no genuine issue as to any material fact, and that it is entitled to summary judgment as a matter of law. The Court will deny Union's motion for summary judgment on Corrales Ventures' contract claim.

### C.  Extra-Contractual Claims

Under New Mexico common law, "[a]n insurance company acts in bad faith when it refuses to pay a claim of the policyholder for reasons which are frivolous or unfounded.  An insurance company does not act in bad faith by denying a claim for reasons which are reasonable under the terms of the policy."  NMRA, Civ. UJI 13-1702; *see also Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004-NMSC-004, ¶ 3, 135 N.M. 106, 109, 85 P.3d 230, 234.  A plaintiff may prove bad faith failure to pay a first party insurance claim if it can prove that the insurance company acted unreasonably under the circumstances to conduct a timely and fair investigation or evaluation of the claim, or it unreasonably delayed its notification to the policyholder that the claim would be paid or denied, or it failed to timely investigate or evaluate or pay a claim.  *See id.*

To prove a violation of the Unfair Insurance Practices Act, Corrales Ventures must prove that Union did any of the things that are prohibited by the Act.  NMRA, Civ. UJI 13-1706. Union requests that the Court grant summary judgment on the allegations that it misrepresented pertinent facts or policy provisions relating to the coverages at issue; failed to acknowledge and act reasonably promptly upon communications with respect to Corrales Ventures' claims arising under the Policy; failed to adopt and implement reasonable standards for the prompt investigation and processing of Corrales Ventures' claims arising under the Policy; failed to affirm or deny coverage of  Corrales Ventures' claims within a reasonable time after proof of loss requirements under the Policy was completed and submitted; did not attempt in good faith to effectuate a prompt, fair and equitable settlement of Corrales Ventures' claims once liability became reasonably clear; compelled Corrales Ventures to institute litigation to recover amounts due under the Policy by offering substantially less than the amounts ultimately recovered if the

amount claimed is reasonably similar to amounts ultimately recovered; failed to settle Corrales

Ventures' claims promptly where liability became apparent under one portion of the policy

coverage in order to influence settlement under other portions of the policy coverage; and failed

to promptly provide Corrales Ventures with a reasonable explanation of the basis relied on in the

policy in relation to the facts or applicable law for denial of a claim or for the offer of a

compromise settlement. *See* Doc. 48 at 13[4]; Doc. 1-3 at 10–13 (alleging violations of §§ 59A-

16-20(A) thru 59A-16-20(E), 59A-16-20(G), 59A-16-20(M) thru 59A-16-20(N) of the New

Mexico Unfair Insurance Practices Act); N.M. STAT. ANN. § 59A-16-20.

      1.  *Misrepresentation of Facts or Policy Provisions*

      Corrales Ventures argues that Union "knowingly misrepresented . . . that the roof could

be 'coated' without addressing the underlying moisture, that such a repair would meet the policy

language of 'like kind and quality,' and that *this* repair method is the only amount covered under

the policy." Doc. 53 at 22. Corrales Ventures has not provided any evidence, however, that

Union knew that these representations were untrue or dishonest; it merely points to evidence that

Union's experts agreed that if the roof had moisture trapped in it, or part of it, it would not be

appropriate to coat that part of the roof without remediating it first. *See* Doc. 53-15 at 25

(95:17–96:5); Doc. 53-16 at 11 (39:14–40:7). There is no question that the parties and their

experts disagree about the extent of the damage, the cause of the damage, the appropriate

remedy, and whether all the damage is covered under the policy, but Union's disagreement with

Corrales Ventures does not rise to the level of a "misrepresentation." The Court will grant

---

[4] Union combines Corrales Ventures' common law bad faith claims with its statutory claims under the New Mexico Unfair Insurance Practices Act. Doc. 48 at 13. To the extent that Union does not specifically allege a failure of proof on each alleged violation of the Unfair Insurance Practices Act, the Court will deny summary judgment on that alleged violation.

summary judgment in favor of Union on Corrales Ventures' common law bad faith claim and its

unfair insurance practice claim to the extent that each is based on an alleged misrepresentation of

the facts or policy provisions.

> 2. *Failure to Act Reasonably Under the Circumstances to Conduct a Prompt, Fair, or Equitable Evaluation of Corrales Ventures' Claim*

Union argues that it conducted a reasonable investigation of Corrales Ventures' claim,

and that it did not delay in investigating the claim. *See* Doc. 48 at 15–17. In response, Corrales

Ventures argues that Union failed to act reasonably under the circumstances to conduct a prompt,

fair or equitable evaluation of its claim. Doc. 53 at 15–22. Corrales Ventures relies on evidence

that it made its claim in early May 2019, but Union did not assign an engineer to inspect the

property until July 23, 2019. *See* Doc. 53-4 at 2; Doc. 48-12 at 2. Union paid for hail damage to

the HVAC system in September 2019, but did not pay for any damage to the roof until December

12, 2019. *See* Docs. 48-6 at 8–9, 48-16, 48-23 at 2–12,[5] 48-24. It also points to evidence that

Union's experts agree that recoating a wet and damaged roofing system would be ineffective.

*See* Docs. 53-15 at 25 (95:17–96:5), 53-16 at 11 (39:14–40:7).

Corrales Ventures was not satisfied with Union's handling of its claim, and it hired a

public adjuster to conduct an evaluation of the property. *See* Docs. 53-6 at 4–5, 53-5 at 9–36.

The public adjuster submitted its report to Union on March 24, 2020. *See id.* The public

adjuster estimated the replacement cost value (RCV) of the property to be $1,050,564.83, and the

actual cash value (ACV) to be $773,720.64, *see id.*, which was substantially higher than Union's

determination that the RCV was $215,510.34 and the ACV was $144,937.25, Doc. 48-24 at 4.

On April 28, 2020—more than a month after receiving it—Union acknowledged receipt of the

---

[5] Exhibit 22 is Document 48-23 rather than Document 48-22. Exhibit 17 was split into two parts and appears at Documents 48-17 and 48-18. Consequently, all exhibits after Exhibit 17 do not match the Document number.

public adjuster's loss estimate and rejected it.  Doc. 53-7.

In an effort to resolve this dispute, Union hired a Texas roofing consultant to inspect the roof along with Corrales Ventures' public adjuster and roofer, and Union's original engineering consultant.  *See* Doc. 48-29 at 2.  This inspection did not take place until May 28, 2020.  *Id.* Union received the engineer's supplemental report on May 30, 2020, but it still had not provided the supplemental report or the revised estimate for repairs to Corrales Ventures as of August 10, 2020, despite many attempts by Corrales Ventures to obtain this information.  *See* Docs. 53-8 at 2, 4; 53-11 at 2; 53-12 at 2; 53-13 at 13.  The public adjuster also repeatedly questioned whether Union's suggested repair method would work.  *See* Doc. 53-12 at 7–11.  Union did not issue its final payment until after Corrales Ventures filed this lawsuit.  *See* Doc. 48-31.

In its reply, Union argues that Corrales Ventures is largely responsible for any delays in its claims handling.  *See* Doc. 57 at 5.  Whoever is responsible for the delays, however, is quintessentially an issue of fact for the jury.  Union further argues that Corrales Ventures is attempting to lower the standard for showing bad faith to a reasonableness standard, rather than showing that Union acted in bad faith by proving recklessness or dishonesty.  *See* Doc. 57 at 5–6. The New Mexico jury instructions on bad faith, however, specifically provide for bad faith claims based on a failure to "act reasonably under the circumstances to conduct a timely and fair investigation [or] evaluation of the claim."  NMRA, UJI 13-1702.  The New Mexico Supreme Court has approved this instruction, explaining

> In failure-to-pay claims, . . . a plaintiff . . . might make a proper showing that the insurer acted unreasonably in denying or delaying a claim, entitling the plaintiff to compensatory damages, without having made a prima facie showing that the refusal to pay was frivolous or unfounded.  In such circumstances, it is proper for the trial court to submit the plaintiff's bad-faith claim to the jury for consideration of an award of compensatory damages but withhold the punitive-damages instruction.

*Sloan*, 2004-NMSC-004, ¶ 19, 135 N.M. at 113, 85 P.3d at 237.  Based on the evidence that

Corrales Ventures points to, Union has failed to show that there are no material issues of fact as to whether Union acted unreasonably in delaying or denying Corrales Ventures' claim.  The Court will permit Corrales Ventures' bad faith claim based on this theory to go to the jury.

> 3. *Whether Union's Valuation of the Claim was Unfounded, Lacking Support in the Policy and Circumstances of the Claim*

Union argues that Corrales Ventures cannot prove that its valuation of the claim was unfounded.  Doc. 48 at 12–16.  In support of this theory of its bad faith claim, Corrales Ventures points to evidence that Union "misrepresented" that coating the roof would fix the roof.  Doc. 53 at 22.  The Court already has determined that there is no evidence that Union "misrepresented" anything.  *See* Part C(1), *supra.*

Corrales Ventures also argues that Union failed to explain why it was only partially paying its claim.  Doc. 53 at 23 (citing to Union's payment letters (Docs. 48-16, 48-24, 48-31)).  But each of these letters included inspection reports and/or estimates which explained the basis for each payment and explained how Corrales Ventures could obtain the replacement cost value of the loss.  *See* Docs. 48-16, 48-24, 48-31.  In addition, Corrales Ventures *admits* that Union relied on the opinions of its experts and consultants to make repair recommendations.  Doc. 53 at 23.  It argues, however, that the fact that Union has "no written guidelines for dealing with conflicts between [its] consultants and [its] insured's consultants" is a violation the New Mexico Unfair Insurance Practices Act and supports a finding of bad faith.  *See id.* (citing N.M. STAT. ANN. § 59A-16-20(C)).

New Mexico's Unfair Insurance Practices Act does not require that an insurance company adopt written guidelines for dealing with conflicts between the insurance company's consultants and an insured's consultants.  Instead, the Act prohibits an insurance company to "fail[ ] to adopt and implement reasonable standards for the prompt investigation and processing

of insureds' claims arising under policies." N.M. STAT. ANN. § 59A-16-20(C).  The fact that

Union does not have *written* policies specifically relating to dealing with conflicts between its

consultants and its insured's consultants does not by itself violate the Unfair Insurance Practices

Act and is not sufficient to show that its valuation of Corrales Ventures' claim was unfounded

and lacked support in the policy and the circumstances of the claim.  The Court will grant

summary judgment in favor of Union on Corrales Ventures' common law bad faith claim to the

extent that it is based on the theory that Union's valuation of the claim was unfounded or lacked

support in the policy and circumstances of the claim.  It also will grant summary judgment in

favor of Union on Corrales Ventures' unfair insurance practice claims to the extent it is based on

either a failure to adopt and implement reasonable standards for the prompt investigation and

processing of insureds' claims arising under policies, N.M. STAT. ANN. § 59A-16-20(C), or a

failure to promptly provide an insured a reasonable explanation of the basis relied on in the

policy in relation to the facts or applicable law for denial of a claim or for the offer of a

compromise settlement, N.M. STAT. ANN. § 59A-16-20(N).

### 4. *Whether Union's Actions or Inactions Compelled Corrales Ventures to Institute Litigation*

Union argues that there is no evidence that Union's actions or inactions compelled

Corrales Ventures to file this lawsuit.  Doc. 48 at 17.  Corrales Ventures contends that the

insurance policy required that it file any lawsuit within two years of the date of claim, Doc. 48-4

at 109, which required that it file its lawsuit by July 30, 2020.  The joint inspection with the

public adjuster took place on May 28, 2020, and the engineer issued his supplemental report to

Union two days later.  Corrales Ventures still had not received that report or the revised repair

estimate by July 15, 2020, despite repeatedly inquiring about these items.  *See* Docs. 53-8, 53-

11, 53-12.  Corrales Ventures filed this lawsuit on July 20, 2020.  Doc. 1-3.  Corrales Ventures

still had not received the supplemental report and revised estimate on August 10, 2020, *see* Doc. 53-13 at 2–3, well after it was required to file its lawsuit.  Union issued its final payment to Corrales Ventures on August 12, 2020, Doc. 48-31, which was for an amount substantially less that what Corrales Ventures alleges that it is owed.  Based on this evidence, a reasonable jury could find that Union compelled Corrales Ventures to institute litigation to recover amounts due under the policy by offering substantially less that the amount Corrales Ventures may recover in its breach of contract claim (assuming Corrales Ventures recovers an amount that is reasonably similar to the amount it claimed prior to instituting this lawsuit).  *See* N.M. STAT. ANN. § 59A-16-20(G).  The Court will deny Union's motion for summary judgment on Corrales Ventures' claim that Union violated § 59A-16-20(G) of the New Mexico Unfair Insurance Practices Act.

## IV.   Conclusion

For the foregoing reasons, the Court GRANTS defendant Union Insurance Company's Motion for Summary Judgment in part and DENIES it in part.

1. The Court DENIES Union's Motion for Summary Judgment on Corrales Ventures' breach of contract claim.

2. The Court GRANTS Union's Motion for Summary Judgment on Corrales Ventures' common law bad faith claim and its unfair insurance practices claim to the extent that each claim is based on an alleged misrepresentation of the facts or policy provisions. *See* N.M. STAT. ANN. § 59A-16-20(A).

3. The Court DENIES Union's Motion for Summary Judgment on Corrales Ventures common law bad faith claim and its unfair insurance practice claims to the extent that they are based on Union's alleged failure to act reasonably under the circumstances to conduct a prompt, fair, or equitable evaluation of Corrales Ventures' claim.  *See*

N.M. STAT. ANN. § 59A-16-20(E).

4.  The Court GRANTS Union's Motion for Summary Judgment on Corrales Ventures' common law bad faith claim to the extent that it is based on the claim that Union's valuation of the claim was unfounded and lacked support in the policy and circumstances of the claim.

5.  The Court GRANTS Union's Motion for Summary Judgment on Corrales Ventures' statutory bad faith claim to the extent it is based on a failure to adopt and implement reasonable standards for the prompt investigation and processing of insureds' claims, N.M. STAT. ANN. § 59A-16-20(C), and to the extent it is based on a failure to promptly provide an insured a reasonable explanation of the basis relied on in the policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement, N.M. STAT. ANN. § 59A-16-20(N).

6.  The Court DENIES Union's Motion for Summary Judgment on Corrales Ventures' statutory bad faith claim to the extent it is based on Union's actions or inactions compelling Corrales Ventures to institute litigation to recover amounts due under the policy, N.M. STAT. ANN. § 59A-16-20(G).

7.  The Court DENIES Union's Motion for Summary Judgment in all other respects.

_____

Laura Fashing
United States Magistrate Judge
Presiding by Consent