IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

Corrales Ventures, LLC,

      Plaintiff,

 vs.                                   1:20-cv-00872-LF-SCY

Union Insurance Company,

      Defendant.

## ORDER ON DAMAGE ISSUES

This matter comes before the Court *sua sponte*.  The parties have raised several issues relating to damages in connection with preparing for trial in this case.  The Court ordered both parties to file simultaneous supplemental briefs addressing the damage issues.  *See* Doc. 96. After considering the parties' briefs, the Court rules as follows:

1. **Plaintiff may seek replacement cost value ("RCV") on its breach of contract claim, its common law bad faith claim, and/or its claims under the New Mexico Unfair Insurance Practices Act.**

The parties agree that neither the New Mexico Supreme Court nor the New Mexico Court of Appeals have ruled in an analogous situation on whether an insured may recover RCV on a breach of contract claim or a bad faith claim (whether common-law bad faith or statutory) if the insured did not actually repair or replace the damaged property.  *See* Doc. 98 at 5 n.12 ("it does not appear that New Mexico or the 10th Circuit has directly addressed these issues"); Doc. 99 at 3 ("Union cannot locate any discussion of these doctrines in an analogous scenario from a New Mexico state of federal court").  The parties agree that New Mexico substantive law applies to this case.  Doc. 89 at 19.  Because there is no controlling state decision on this issue, the Court must attempt to predict what the New Mexico Supreme Court would do if presented with the

question.  *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665 (10th Cir. 2007).  In doing so, the

Court may seek guidance from New Mexico Court of Appeals decisions, appellate decisions

from other states that have similar legal principles, district court decisions interpreting New

Mexico law, and the general weight or trend of authority on a particular issue.  *See id.*

Corrales Ventures argues that it is entitled to recover RCV damages because RCV is the

proper measure of damages for its three claims, and because the policy does not place a time

limit on its ability to seek RCV benefits.  *See* Doc. 98 at 1–6.  It further argues that because

Union's proposed repair method was inadequate and because Union grossly undervalued its

claim, it could not afford to replace the roof and make the repairs that it deemed were necessary.

*See id.* at 3–6.  Union argues that Corrales Ventures cannot recover RCV because it has not

made any repairs, and under the policy it can only recover RCV once the repairs are made.  Doc.

99 at 1–2.  Union further argues that the Court cannot rewrite the policy to provide for benefits

for which the parties did not contract; that Corrales Ventures did not plead or disclose its

theories of waiver or partial rescission or the prevention doctrine until recently; and that it would

be unfair to allow Corrales Ventures to proceed on those theories at this late date.  *See id.* at 2–5.

It also argues that New Mexico law does not favor partial rescission, and that the prevention

doctrine does not apply because there is no proof that Union took an action prohibited by the

Policy that kept Corrales Ventures from making repairs.  *See id.* at 5–9.  For the following

reasons, I agree that Corrales Ventures may seek RCV on its breach of contract claim and bad

faith claims at trial.

The most comprehensive opinion the Court has found on this subject is the Nebraska

Supreme Court's decision in *D & S Realty, Inc. v. Markel Ins. Co.*, 816 N.W.2d 1 (Neb. 2012).

The question in *D & S Realty* was "whether the insurer's general denial of liability excused the

insured from complying with a policy condition requiring that the insured actually repair or replace the damaged property before replacement costs will be paid." *Id.* at 4.  The Nebraska Supreme Court held that under the doctrine of prevention, if the insurer's denial of liability prevented the insured from complying with the policy provision that required the insured to repair or replace the property before the insurer was obligated to pay replacement costs, the insurer cannot invoke the insured's nonperformance as a defense.  *See id.* at 13.  Further, the doctrine of prevention is not limited to situations in which the insurer acts in bad faith; an insurer can prevent the insured from repairing and/or replacing its property without acting in bad faith. *See id.* at 13–15.  However, whether the insurer prevented the insured from complying with the repair/replace requirement is a question of fact for the jury to determine.  *See id.* at 15–16. Finally, although it acknowledged that some courts had held that the good faith denial of liability under an insurance policy absolutely or permanently excused the insured from repairing or replacing its property in order to obtain RCV, the Nebraska Supreme Court held that the repair/replace condition should only be absolutely excused if the delay in determining coverage materially contributed to a situation where the insured no longer could satisfy the condition.  *See id.* at 16–18.  "In most cases involving good faith denial of coverage, the interests of the parties would be adequately protected by granting a judgment to the insured for actual cash value and, in addition, a declaratory judgment that the insured will be reimbursed for the difference between actual cash value and any repair/replacement costs actually conducted within the time stated in the policy, running from the time of the judgment."  *Id.* at 19.

Corrales Ventures argues that New Mexico adheres to the prevention doctrine, and that the policy at issue in this case permits it to repair or replace the property as soon as reasonably

possible after the loss or damage.[1]   *See* Doc. 98 at 4–5.   The Court agrees with Corrales Ventures

that the New Mexico Supreme Court likely would adopt the reasoning of the Nebraska Supreme

Court as set forth in *D & S Realty* and other similar cases.   The New Mexico Supreme Court has

held that "[a] party to a contract, who prevents its performance by the adverse party, cannot rely

on [the adverse party's non-performance] to defeat his liability."   *National Old Line Ins. Co. v.*

*Brown*, 1988-NMSC-071, ¶ 21, 107 N.M. 482, 487, 760 P.2d 775, 780; *see also Estate of Griego*

*v. Reliance Standard Life Ins. Co.*, 2000-NMCA-022, ¶ 27, 128 N.M. 676, 682, 997 P.2d 150,

156 (same); *Nanodetex Corp. v. Sandia Corp.*, Civ. No. 05cv1041 BB/LAM, 2007 WL 9710538,

at *4 (D.N.M. Oct. 15, 2007) (unpublished) ("It is black-letter law that one party to a contract

may not prevent the other party from performing an obligation under the contract, and then rely

on that non-performance as the basis of a breach-of-contract claim.").[2]

---

[1] Union argues that Corrales Ventures never pleaded or even mentioned the prevention doctrine
until recently and cannot recover under this theory.  *See* Doc. 99 at 2–3.  But Union always has
known that Corrales Ventures sought to obtain RCV.  Union filed a trial brief on November 7,
2022, stating that "Plaintiff seeks to recover the replacement cost value of the damage it alleges
occurred to its Property on July 31, 2018."  Doc. 79 at 1.  Further, in its complaint, Corrales
Ventures asserts that "[a]ll conditions precedent required under the Policy have been performed,
excused, waived or otherwise satisfied by Plaintiff, or Defendant is estopped from raising the
issue due to Defendant's prior breach of the insurance contract."  Doc. 1-3 ¶ 24.  In other words,
Corrales Ventures put Union on notice that it claimed it was excused from the repair/replace
condition based on Union's prior breach; this is the essence of the prevention doctrine.  *See D &*
*S Realty, Inc.*, 816 N.W.2d at 13 (under prevention doctrine, denial of liability may excuse
insured's duty to repair/replace property before insured may recover replacement costs).

[2] Union cites *Guest v. Allstate Ins. Co.*, 2010-NMSC-047, ¶¶ 36–39, 149 N.M. 74, 81, 244 P.3d
342, 349 for the proposition that "[t]he prevention doctrine only applies here if Union has taken
some action that is prohibited by the Policy, which prevented Plaintiff from making repairs."
Doc. 99 at 8.  This is not the holding in *Guest*.  The New Mexico Supreme Court in *Guest* simply
held that whether the plaintiff in that case obstructed the performance of the contract was for the
jury to decide.  *See id.*  If anything, the *Guest* decision supports this Court's conclusion that the
New Mexico Supreme Court likely would hold that whether an insurer that denies liability or
undervalues a claim prevents an insured from complying with repair/replace provision is a
question for the jury.

Further, in *D & S Realty*, the Nebraska Supreme Court asserted, "When the insurer, in breach of the insurance contract, denies liability for the insured's loss, *most* courts conclude that such denial may excuse the insured's duty under the repair/replace condition to replacement cost coverage." *D & S Realty, Inc.*, 816 N.W.2d at 13 (emphasis added).  In support of this statement, the court lists eight federal and state court cases from eight other jurisdictions.  *See id.* at 13 n.31.  The Court's own research suggests that the clear trend of authority on this particular issue is that when an insurer hinders an insured's ability to repair or replace its property by refusing to pay a claim or underpaying a claim, the failure to repair or replace the property may be excused, at least until liability is determined.  *See, e.g.*, *Riverside Apartments of Cocoa, LLC v. Landmark American Ins. Co.*, 505 F. Supp. 3d 1293, 1311–13 (M.D. Fla. 2020); *Utica Mutual Ins. Co. v. Cincinnati Ins. Co.*, 362 F. Supp. 3d 265, 268–71 (E.D. Pa. 2019); *VJ, LLC v. State Auto Property & Casualty Ins. Co.*, Civ. No. 14cv2919, 2016 WL 11602001, at *8–*9 (W.D. Tenn. Aug. 3, 2016) (unpublished); *Fitzgerald v. American Family Mutual Ins. Co.*, Civ. No. 14cv497, 2015 WL 5896139, at *6 (D. Ore. Oct. 6, 2015) (unpublished); *Green v. Allstate Ins. Co.*, Civ. No. 11cv00210, 2015 WL 10939709, at *3–*4 (D. Alaska Mar. 26, 2015) (unpublished); *Stephens & Stephens XII, LLC v. Fireman's Fund Ins. Co.*, 180 Cal. Rptr. 3d 683, 696 (Cal. Ct. App. 2014).  The Court acknowledges that some courts have held that strict compliance with the repair or replace requirement is not excused under the prevention doctrine. *See Kaw Drive, LLC v. Secura Ins.*, 494 F. Supp. 3d 844, 846–48 (D. Kansas 2020) (*Kaw I*) (rejecting prevention doctrine as excusing requirement that insured repair property within time limits to recover RCV); *Kaw Drive, LLC v. State Auto Property and Casualty Ins. Co.*, Civ. No. 21cv02114, — F. Supp. 3d. —, 2022 WL 6730953, at *4–*5 (D. Kansas Oct. 11, 2022) (*Kaw II*) (same); *Frontline Fellowship, Inc. v. Brotherhood Mutual Ins. Co.*, Civ. No. 21cv357, 2022 WL

16856111, at *4 & n.28 (W.D. Okla. Nov. 10, 2022) (unpublished) (rejecting argument that insurer's failure to pay benefits excused the repair or replace requirement as a condition precedent to recovering RCV); *see also Vision I Homeowners Ass'n, Inc. v. Aspen Specialty Ins. Co.*, 674 F. Supp. 2d 1333, 1342–43 (S.D. Fla. 2009) (even if prevention doctrine applied, plaintiff not entitled to RCV because it did not notify insurer within 180 days of loss that it intended to claim RCV coverage); *Jeb Stuart Auction Services, LLC v. West American Co.*, Civ. No. 14cv00047, 2015 WL 5793345, at *5–*6 (W.D. Va. Oct. 1, 2015) (evidence did not support application of the prevention doctrine; therefore, plaintiff was not entitled to RCV).  Because of New Mexico's adherence to the prevention doctrine and the general trend of authority, the Court predicts that the New Mexico Supreme Court would follow the Nebraska Supreme Court's approach in *D & S Realty*.

Thus, Corrales Ventures may recover RCV if it proves that Union breached the insurance contract by failing to pay the full ACV due under the policy, and that Corrales Ventures was unable to repair the property because of Union's underpayment.  If the jury finds in Corrales Ventures' favor on these two questions, Corrales Ventures then will have an opportunity to "be reimbursed for the difference between actual cash value [as determined by the jury] and any repair/replacement costs actually conducted within the time stated in the policy, running from the time of the judgment."  *See D & S Realty*, 816 N.W.2d at 19.

**2. Plaintiff is limited to recovering ACV as of the date of loss, but if it proves that Union significantly underpaid what it owed under the policy, and that Union's underpayment prevented Corrales Ventures from repairing the property, Corrales Ventures may obtain RCV based on the actual cost of repairs, if any are made**.

Union argues that Corrales Ventures' damages are limited to ACV as of the date of loss based on the policy provision.  Doc. 99 at 10–11.  Conversely, Corrales Ventures argues that although ACV damages may be limited to the date of loss, RCV damages necessarily are

calculated at a later date, once repairs are made.  *See* Doc. 98 at 6–9.  For the following reasons, the Court holds that the jury will be asked to determine ACV as of the date of loss.  Corrales Ventures may present evidence regarding the cost of repairing the property as of a later date, but that evidence only would be relevant to the question of whether Union underpaid the claim, which in turn prevented Corrales Ventures from making the necessary repairs.  The jury will not award RCV damages; instead, if the jury awards ACV damages, Corrales Ventures then will receive "a declaratory judgment that [Corrales Ventures] will be reimbursed for the difference between actual cash value and any repair/replacement costs actually conducted within the time stated in the policy, running from the time of the judgment."  *D & S Realty*, 816 N.W.2d at 19.

Under New Mexico Law, "insurance contracts are construed by the same principles which govern the interpretation of all contracts."  *Rummel v. Lexington Ins. Co*., 1997-NMSC-041, ¶ 18, 123 N.M. 752, 758, 945 P.2d 970, 976 (internal quotation marks omitted).  When insurance contracts are unambiguous, courts must construe them "in their usual and ordinary sense," *Slack v. Robinson*, 2003-NMSC-083, ¶ 7, 134 N.M. 6, 9, 71 P.3d 514, 517 (internal quotation marks omitted), and "enforce [them] as written," *Ponder v. State Farm Mut. Auto. Ins. Co*., 2000-NMSC-033, ¶ 11, 129 N.M. 698, 702, 12 P.3d 960, 964.  Further, "courts should not create ambiguity where none exists."  *United Nuclear v. Allstate Ins. Co.*, 2012-NMSC-032, ¶ 10, 285 P.3d 644, 647 (internal quotation omitted).  Policy terms are only deemed ambiguous when they are "reasonably and fairly susceptible of different constructions."  *Knowles v. United Servs. Auto Ass'n*, 1992-NMSC-030, ¶ 9, 113 N.M. 703, 705, 832 P.2d 394, 396 (internal quotation marks omitted).  Ambiguous terms must be construed against the drafter; they are "given the strongest interpretation against the insurer which they will reasonably bear."  *Rummel*, 1997-NMSC-041, ¶ 22, 123 N.M. at 759, 945 P.2d at 977; *see also United Nuclear*,

2012-NMSC-032, ¶ 10, 285 P.3d at 648.

Union argues that the policy provides that the loss is valued at actual cash value "as of the time of loss or damage." Doc. 99 at 10 (citing Doc. 48-4 at 95). Corrales Ventures concedes that "the standard valuation of actual cash value limits the measurement of actual cash value to the time of loss," but it argues that "this type of limiting language is absent from similar provisions describing replacement cost value." Doc. 98 at 7. The Court agrees that the policy provision regarding ACV is clear and unambiguous: "We will determine the value of Covered Property in the event of loss or damage . . . [a]t actual cash value as of the time of loss or damage . . . ." Doc. 48-4 at 95. Thus, with respect to ACV, if Corrales Ventures is successful in proving that Union breached the insurance contract and underpaid its claim, it will be entitled to recover ACV as of the date of the loss, which in this case is July 30, 2018.

With respect to RCV, the policy does not limit the amount to a particular date. Instead, the policy states that Union will not pay RCV "[u]ntil the lost or damaged property is actually repaired or replaced; and [u]nless the repair or replacement is made as soon as reasonably possible after the loss or damage." Doc. 48-4 at 98. Thus, the policy itself assumes that RCV will be determined at a date after the date of loss.

Further, RCV is limited to the least of "(1) The Limit of Insurance applicable to the lost or damaged property; (2) The cost to replace the lost or damaged property with other property: (a) Of comparable material and quality; and (b) Used for the same purpose; or (3) The amount actually spent that is necessary to repair or replace the lost or damaged property." *Id.* The third limitation cannot be determined if and until Corrales Ventures actually repairs the property. Thus, if Corrales Ventures proves that Union breached the contract by underpaying its claim, and that Union's breach prevented it from complying with the repair/replace provision, it then

will have the option to repair the property as outlined in the preceding section.  If it chooses to repair the property, the recoverable RCV necessarily will be based, at least to some extent, on the actual cost of repairs.[3]  Thus, the date of calculation for RCV will be sometime in the future, based on what the repairs actually cost.  *See Woodland Creek Manor Homes Assoc., Inc. v. Amguard Ins. Co.*, 587 F. Supp. 3d 865, 869 (D. Minn. 2022) (RCV " 'necessarily requires that the date of loss not serve as the measurement date, as the necessary information may well not be available until the date of replacement, leaving the insurer to bear any increases due to rising construction costs.' ") (quoting with approval 12A COUCH ON INSURANCE § 176:58 (3d ed. Dec. 2021 Update)).

### 3.  The Court will determine the application of prejudgment interest at a later date but will enter a judgment that precludes a double recovery.

Corrales Ventures suggests that the Court need not decide now whether the date used for the determination of damages affects the application of prejudgment interest, but instead should enter a final judgment that precludes a double recovery.  *See* Doc. 98 at 11.  Union argues that if the Court permits Corrales Ventures to recover anything other than ACV as of the date of loss, adding prejudgment interest to the amount awarded would result in a windfall to Corrales Ventures.  The Court agrees that it makes sense to wait and see what the judgment is before ruling on prejudgment interest, but it also agrees that any judgment should preclude a double recovery.  The Court will not determine whether prejudgment interest is appropriate until a final judgment is entered.

---

[3] If the limit of insurance or the cost to replace the lost or damaged property with other property of comparable material and quality and used for the same purpose is less than the actual cost of repairs, Union is only obligated to pay the least of these amounts.  Doc. 48-4 at 98.  Further, Union is not obligated to pay for any "increased cost attributable to enforcement of or compliance with any ordinance or law regulating the construction, use or repair of any property."  *Id.* at 99.

**4. The sale of the Property to Las Tiendas, LLC does not affect Corrales Ventures' ability to recover RCV.**

Corrales Ventures represents that if it is awarded damages through this litigation, it still is able and willing to make the repairs on the property with the proceeds of any judgment. *See* Doc. 98 at 11–12. Given the Court's ruling as to whether it may recover RCV in section 1, above, if Corrales Ventures proves its case and succeeds in obtaining a judgment in its favor, it must actually make the repairs in order to collect RCV. If it fails to do so, it will not be able to collect RCV.

IT IS SO ORDERED.

Laura Fashing
United States Magistrate Judge
Presiding by Consent